# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

DUHON                                        CIVIL ACTION NO. 18-01418

VERSUS                                                    JUDGE JUNEAU

COMMISSIONER OF SOCIAL          MAGISTRATE JUDGE WHITEHURST
SECURITY

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision should be affirmed and this matter should be dismissed with prejudice.

## Administrative Proceedings

The claimant, Shanna Antil Duhon, fully exhausted her administrative remedies before filing this action in federal court. On September 9, 2014, she filed applications for a period of disability and disability insurance benefits ("DIB") alleging that she became disabled on April 18, 2014. *R. 8, 9.* Her applications were denied. *Id.*. Administrative Law Judge John R. Burgess held administrative hearings on October 18, 2016, January 31, 207 and September 7, 2017. *Id. at 31 - 87.*[1]

---

[1] The hearings were continued in order for the ALJ to order and receive additional records related to the claimant's

Claimant elected to appear and testify without the assistance of an attorney or other representative. *Tr. at Exh. 18B*. The ALJ decided that the claimant was not disabled within the meaning of the Social Security Act from April 18, 2014 (the alleged disability onset date) through September 29, 2017 (the date of the decision). Claimant requested review of the decision, but the Appeals Council found no basis for review. *Tr. 6.* Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). Claimant then filed this action seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

The claimant was born on November 8, 1975. At the time of the ALJ's decision, she was 38 years old. The claimant has at least a high school education and is able to communicate in English. *R 8, at 22.* She has relevant work experience as a certified nurse's assistant. *Id.* The claimant alleged that she has been disabled since April 18, 2014, due to work-related injuries while working with a combative patient in which she struck her left knee and hurt her back.

Following her injury, the claimant was examined and evaluated on June 25, 2014 by orthopedic surgeon, Dr. John B. Sledge, III, at the Lafayette Bone & Joint Clinic. The claimant complained of burning pain with constant ache bilaterally in

medical treatment.

the lower back upon movement. Dr. Sledge's assessment indicated although claimant had an antalgic gait and a positive straight leg raise, she had no evidence of edema and she retained full muscle strength. The claimant's left knee showed moderate tenderness with marked pain and some joint swelling. She had normal sensation and was able to fully flex and extend. *Tr. 2F at 7, 8*. An MRI of the claimant's lumbar spine taken on May 30, 2014, prior to Dr. Sledge's examination, showed degenerative changes including foraminal stenosis and disc protrusions at L4-5. An MRI of her left knee showed small joint effusion and small meniscal tear. *Tr. 1F at 2; 2F at 8.*

On August 19, 2014, Dr. Sledge administered a bilateral L4-5 facet joint injection and transforaminal epidural steroid injection and a left knee intraarticular injection. *Tr. 2F at 10, 14,* 24. In a follow-up examination on September 5, 2014, the claimant reported she experienced 80% overall relief in pain following the injections. She rated her pain a "5" on a 0 – 10 scale. *Tr. 2F at 24*. Dr. Sledge recommended she seek physical therapy. The claimant indicated she was waiting for aquatic physical therapy approval. On September 17, 2014, the claimant's examination indicated the pain in her low back radiated down the right leg to her foot. She also stated that the pain in her left knee increased when she was standing or walking for long periods of time. She stated that the knee injection helped and

rated her pain a "7" on a scale 0-10. *2F at 28.* Dr. Sledge's notes state, "[o]verall she is doing better than before the injections." *Tr. 2F at 30.*

The claimant's October 27, 2014 examination provides aquatic physical therapy had increased her range of motion and was providing pain relief in both her lumbar spine and left knee. Dr. Sledge recommended continued therapy and maintained her no work status during the pending treatment. *Tr. 2F at 34.* In a December 29, 2014 report, Dr. Sledge noted that the claimant had discontinued therapy due to an abscess. He further noted that since stopping the therapy her low back pain and radicular symptoms had suddenly worsened progressively although he described the pain as "slight." Also, her left knee pain had increased. Dr. Sledge stated he would resubmit for aquatic therapy "since it has significantly helped her in the past." He maintained her "no work" status. *Tr. 2F at 39.*

The claimant's physical therapy ended on January 16, 2015. *Tr.10F at 2.* In a follow up exam on March 23, 2015, Dr. Sledge re-evaluated the claimant. He noted that she had been compliant with treatment and attended and participated in all physical therapy sessions.  While she had a slight increase in ROM and function, she had no change in pain and function which she described as moderate, generalized, low back pain characterized as burning, constant ache with deep pain cumulating with activity. She had a negative straight leg raising test and an antalgic

4

gait. Dr. Sledge recommended lumbar medial branch blocks. *Tr. 14F at 4, 5.*

Bilateral median branch blocks were performed on the claimant's L3-4, L4-5, and L5-S1 right side on April 2, 2015 and on her left side on April 7, 2015. *Tr. 10F at 2*; *14F at 6.* The claimant reported 50% relief for "the first couple of days." Thereafter, on May 19, 2015 and May 26, 2015, Dr. Sledge performed radiofrequency ablation. In his operative reports, Dr. Sledge stated that the claimant "underwent a diagnostic median branch block with excellent though temporary relief of her symptoms making her an ideal candidate for radiofrequency ablation. On June 12, 2015, the claimant followed up with Dr. Sledge and reported 60% relief in pain. *Id.* Dr. Sledge ordered physical therapy for strengthening exercise and modalities to decrease pain and increase range of motion. The records indicate that through most of 2016 the claimant did not receive significant treatment for back pain. The exception was in September 2016 after her involvement in a motor vehicle accident. None-the-less, three days after the vehicular accident the claimant was able to ambulate normally with full lumbar range of motion. *Tr. 16F.* Upon her discharge in November 2016, her therapist confirmed her good progression. *Tr. 15F at 67, 69.* By March 2017, the claimant reported that she was able to run up bleachers and walk multiple times per week. *Tr. 20F at 23, 25.*

At the September 7, 2017 hearing, the claimant stated that she worked as a

certified nursing assistant for 18 years. She also stated she has sleep apnea tor which the prescribed CPAP machine works well; she had a number of abscesses that all cleared up with antibiotic topical creams; and her hypertension is controlled with prescribed medications. *Tr. 82 - 83*. As to the claimant's obesity, the ALJ found that the claimant has an impairment of a weight-bearing joint, which he took into account in his decision. *Tr. 22*. The claimant added that she no longer receives orthopedic treatment. *Tr. 84.* Rather she is treated via emergency rooms and is prescribed medications, which control her pain. *Id.* She is on a waiting list for physical therapy. The claimant stated that she cooks occasionally, does some laundry and housework and shops at the grocery store 3 times a week. *Tr.* 67. She estimates she can lift between 5-10 pounds. *Tr. 85-86.* She alternates sitting, standing, and walking throughout the day; however, medication controls discomfort while sitting and standing. *Id.* With regards to walking, the claimant can walk between 8-10 blocks back and forth. *Id.*

The claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the

proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.*

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence, *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985), and credibility assessments, *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991), are for the Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating

and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Id.*

## B. <u>Entitlement to Benefits</u>

The DIB program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

## C. <u>Evaluation Process and Burden of Proof</u>

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled.   This process requires the ALJ to determine whether the

claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. §§ 404.1520(a)(4). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity, 20 C.F.R. § 404.1520(a)(4), by determining the most the claimant can still do despite her physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do her past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the

9

Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Id.* at 1302; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan*, 38 F.3d at 236.

### D. <u>The ALJ's Findings and Conclusions</u>

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since April 18, 2014. *Tr. 18.*   This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: residuals of lumbosacral back pain; knee contusion; sleep apnea; episodes of abscesses; and obesity. (20 CFR 404.1520(c) and 416.920(c)). *Id.* This finding is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment, specifically listings 1.04 and 1.02. *Tr. 18-19.* The claimant did not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform a full range of light work at all exertional levels *Tr. 18.* The claimant challenged this finding.

At step four, the ALJ found that the claimant is not capable of performing any past relevant work as a certified nurse's assistant. *Tr. 17.* The claimant did not challenge this finding.

At step five, the ALJ found that the claimant was not disabled from April 18, 2014 through September 20, 2017 (the date of the decision) because there are jobs in the national economy that she can perform. *Tr. 23.* The claimant challenged this finding.

### E. The Allegations of Error

The claimant contends that the ALJ erred by (1) "failing to find the existence of a 12 month period of disability" and; (2) assigning a functional capacity for the full range of light work at all times.

### 1. Evaluation of the Evidence as to a Period of Disability

The claimant contends that the ALJ erred in failing to properly evaluate the medical evidence as to whether or not the claimant's spinal impairment continued to be disabling for 12 months after her alleged disability onset date. She argues that on May 26, 2015, twelve months after the onset of her injury on April 18, 2014, she was still "under active treatment with her orthopedic specialist." *R. 8.* In other words, the claimant asserts she is entitled to a period of disability because she was still under the care of her doctor 12 months after her alleged disability onset date.

11

In his ruling the ALJ noted that four months after her injury, in August 2014, the claimant reported 80% overall relief from pain, and in December 2014, Dr. Sledge stated that her physical therapy had significantly helped. *Tr. 301, 316.* In April, 2015, approximately one year after her injury, the claimant reported 50% relief in pain which was temporary. But Dr. Sledge opined this made her "an ideal candidate" for the radiofrequency ablation procedure he performed in May 2015. The claimant reported the procedure gave her 60% pain relief. The ALJ noted she was discharged by her physical therapist in November 2016 based on her good progress and in March 2017 she reported that she was able to run up bleachers and walk multiple times per week. An x-ray of the lumbar spine taken in July 2015 revealed "mild" degenerative disc disease.

To be disabled under the Social Security Act, a claimant must have an impairment that both *lasts twelve months* and is severe enough to prevent the claimant from engaging in any substantial gainful work. *Barnhart v. Walton*, 535 U.S. 212, 218 (2002); *see also* 80 Fed. Reg. 57418-02, 57420 (Sept. 23, 2015) (explaining Commissioner's policy that impairment must be disabling for continuous period of at least 12 months). Here, the ALJ recognized the claimant's April 18, 2014 injury, but after thoroughly evaluating her medical records, primarily from her orthopedic surgeon Dr. Sledge, he found that her treatment was effective

and her conditions were controlled by medication or therapy. See *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). Pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994), *see also Chambliss v. Massanari*, 269 F.3d 520, 521 (5th Cir. 2001) ("Pain must be ... wholly unresponsive to therapeutic treatment to be disabling."). Accordingly, the Court affirms the ALJ's finding that the claimant was not disabled under the Act.

## 2. Evaluation of the Evidence as to the Claimant's Residual Functional Capacity to Perform Full Range of Light Work

The claimant also contends that the ALJ's finding that she could perform the full range of light work for the entire relevant period, April 14, 2014 through September 29, 2017, was not supported by substantial evidence in the record. In her brief, the claimant argues that "the record does not contain substantial evidence supporting an assessment" that she could sustain light work activity. Interestingly, however, the claimant contends that if the ALJ had determined that "she was no longer disabled at that time," such a finding could have been "legally correct." The Court will address the claimant's alleged error.

The ALJ found that the claimant has the residual functional capacity to

perform the full range of light work. Light work involves lifting no more than 20 pounds at a time but frequently lifting or carrying objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Light work also requires a person to be able to stand and walk for six hours out of an eight-hour work day. Soc. Sec. Rul. 83–10, 1983 WL 31251, at *6; Soc. Sec. Rul. 96–9p, 1996 WL 374185, at *8.

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002);   In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir.

2000).

Here, the ALJ reviewed the entirety of the medical records as well as the claimant's hearing testimony regarding her abilities related to lifting, standing and walking. The ALJ gave "some weight" to the State Agency disability assessment. That assessment opined that the claimant is capable of light work: 1) occasionally lifting and carrying 20 pounds; 2) frequently lifting and carrying 10 pounds; standing/walking 4 hours; 3) sitting 6 hours. The ALJ, however, found that the limitation of standing for 4 hours was based on the claimant's knee pain and was contrary to the medical records. He noted that the medical records indicated the claimant had ceased treatment for the knee as well as her testimony that any pain was controlled with medication. The ALJ also relied on the claimant's medical records indicating she received 80% overall pain relief from her lumbar treatment in August 2014 through January 2015 (with a brief relapse caused by an abscess) and had 50% to 60% relief from her treatments in April and May 2015. The claimant's treating physician did not address any functional limitations, nor do the medical records refer to any limitations. As it is undisputed that the claimant's previous work as a certified nurse's aide was considered "heavy," it was reasonable for the ALJ to conclude that her medical treatment which achieved pain relief of 80 %, 50% and 60% throughout the relevant period would allow the claimant to perform light work

throughout the relevant period. *Carey*, 230 F.3d at 135 (Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.).

In light of the foregoing, the undersigned finds that substantial evidence supports the ALJ's determination that the claimant is able to perform light work as defined in the Social Security Regulations.

## Conclusion

The ALJ used the appropriate legal standards to weigh and resolve conflicts in the medical opinion evidence. His residual functional capacity findings and determination that the claimant could perform full range light work for the entire relevant period are supported by substantial evidence.

## Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be **AFFIRMED** and this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of

16

filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 23rd day of October, 2019.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**